IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| AMANDA ANDRUS-KARKER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 6:16-cv-01883-AA<br>**OPINION AND ORDER** |

AIKEN, District Judge:

Plaintiff Amanda Andrus-Karker brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## BACKGROUND

On June 23, 2011, plaintiff applied for SSI. She alleged disability beginning January 1, 2000. After plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on July 10, 2013. At

Page 1 – OPINION AND ORDER

the hearing, plaintiff testified and was represented by an attorney. A vocational expert ("VE") also testified. On July 19, 2013, the ALJ issued a written decision denying plaintiff's claim. After the Appeals Council denied review, plaintiff filed a complaint in the District of Oregon. On April 1, 2015, Magistrate Judge Paul Papak issued Findings and Recommendations ("F&R"), which recommended reversal of the ALJ's decision and remand to the agency for further proceedings. On June 2, 2015, District Judge Marco Hernandez issued an Order and Judgment, adopting the F&R, reversing and remanding for further proceedings.

On remand, a hearing was held before the ALJ on May 19, 2016. A VE and a medical expert ("ME") testified at the hearing. On June 9, 2016, the ALJ denied plaintiff's claim for SSI. The Appeals Council did not review the case on its own motion. The ALJ's decision became the final decision of the agency. Plaintiff then filed the present complaint with this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had intermittently engaged in "substantial gainful activity" since June 23, 2011, but not through the entire period at issue. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b); §§ 416.971 *et seq.* At step two, the ALJ found plaintiff had the following severe impairments as of the alleged onset date: borderline intellectual functioning, dysthma, and posttraumatic stress disorder ("PTSD")/anxiety with social phobia. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c).

At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found plaintiff has the residual functional capacity to:

> [p]erform a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to simple, repetitive tasks requiring no more than occasional interaction with supervisors and no more than brief, superficial interaction with coworkers and the general public. This individual does not perform well in an independent work setting, and so would function and work best in a team setting.

The claimant would also need to work in an environment where the work is repetitive in nature and her production speed would be increased gradually over time.

At step four, the ALJ concluded that plaintiff had no past relevant work history. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); §§ 416.965. At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a motel cleaner, laundry folder, or industrial cleaner. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

The government concedes that the ALJ's decision contains legal errors and must be remanded. The parties disagree, however, over whether the remand should be for further proceedings or for an immediate award of benefits.

The Ninth Circuit has developed a three-step process to determine whether a Social Security appeal should be remanded for further proceedings or for an immediate award of benefits. At step one, the reviewing court must determine whether the ALJ made a harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). At step two, the court reviews the record as a whole to determine whether the record is fully developed and free from conflicts, with all essential factual issues resolved. *Id.* Step two is the most important step because "the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). If the record is fully developed, the court proceeds to step three and considers "whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (citations omitted). If the ALJ would be required to make such a finding, the court has discretion to remand for an immediate award of benefits. *Id.* Even when

all three steps are satisfied, however, the court may remand for further proceedings if the record as a whole "creates serious doubt as to whether a claimant is, in fact, disabled within the meaning of the ... Act." *Id.* at 408 (citation and internal quotation marks omitted).

Here, plaintiff makes several assignments of error, arguing that: (1) the ALJ erred in finding that plaintiff's work activities demonstrated the ability sustain competitive substantial gainful activity on a full-time basis; (2) the ALJ failed to properly credit evidence from an examining and reviewing psychologist; (3) the ALJ failed to properly credit a work trial assessment; (4) the ALJ failed to give clear and convincing reasons for rejecting plaintiffs subjective symptom testimony; (5) the ALJ failed to properly credit lay evidence; (6) and the commissioner failed to prove that plaintiff retains the ability to perform other work in the national economy.

In her Motion for Remand, the Commissioner concedes that the medical evidence was not reviewed properly and fully developed by the ALJ. The Commissioner notes that there is confusion over whether plaintiff vocational counselor actually opined that plaintiff could perform competitive work. Further, she acknowledges the testimony around whether Dr. Garrison's opinion of whether plaintiff required job support services was not clear. Likewise, the Commissioner avers that opinions of the examining and reviewing psychologist need further clarification. Accordingly, as both parties acknowledge that the ALJ committed reversible error, step one of the credit-as-true test is satisfied.

Proceeding to step two, I find that remand for further proceedings is the proper course. I cannot conclude the record is fully developed and free from ambiguities or conflict. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015.)

As a preliminary matter, I note that the key issue argued in plaintiff's briefing is whether her symptoms caused by borderline intellectual functioning, along with her other mental health impairments, preclude her from work in the national economy. Specifically, plaintiff points to evidence in the record suggesting that she requires job support services to work and that this limitation would preclude her for gaining substantial employment.

Plaintiff was born 1992 and graduated from high school with a modified diploma, after a school history of special education for learning disabilities. Medical records reveal that she has full scale IQ of 73 putting her in the borderline intellectual functioning range.[1] In terms of daily activities, plaintiff is able to dress herself, perform personal hygiene, and do her own laundry. She is able to prepare simple foods, has limited cooking skills, and cleans dishes. She uses a computer and a phone, and she utilizes social media. Plaintiff does not drive, but is able to use public transportation or bicycle. She runs errands and goes to the grocery store with a parent, though she does shop for herself on occasion. Plaintiff enjoys sports and the outdoors, as well as hanging out with friends and attending community activities such the Eugene Saturday Market.

Plaintiff has some limited work experience. From August 27, 2011 to September 2, 2011, she was referred to a work evaluation program at St. Vincent de Paul by the Office Vocation Rehabilitation Services ("OVRS"). Plaintiff also reported that she performed volunteer jobs for several organizations including Greenhill Humane Society, Goodwill, Food for Lane County, Next Step Recycling and First Place Family Day Care Center, and the Galt Foundation. Further, in 2014, plaintiff worked for Northwest Youth Corps ("NYC"), which was a supervised program that focused on preparing participants for full time work. Program members worked

---

[1] To meet the applicable requirements for the Listed impairment of Intellectual Disability in Listing 12.05(B) a an applicant must have, *inter alia*, a fully scale or comparable IQ score of 70 or below.

Page 6 – OPINION AND ORDER

under a crew leader, and received training and certification in various areas.[2] From January, 2015, to the time of the hearing before the ALJ in May, 2016, plaintiff worked, typically 15 to 16 hours a week, for Sun Communications Operating, a gated manufactured home community. This work included cleaning, showing houses, managing pool chemicals and weeding.[3]

Dr. Allison Prescott examined plaintiff and completed a psychological evaluation on October 24, 2011. Dr. Prescott diagnosed plaintiff with borderline intellectual function and adjustment disorder with anxiety. She wrote that plaintiff had significant maladaptive behaviors with deficits in all domains. Specifically, plaintiff has deficits in social/interpersonal communication, functional academic, self-direction, work, and communication skills. Dr. Prescott noted that plaintiff "is not likely to maintain employment without job support services." Tr. 208. The ALJ gave this final conclusion little weight, opining that it is speculative and vague. He also noted that it was inconsistent with the rest of the record, as plaintiff had "been able to engage in several work opportunities with apparent success and she regularly engages in activities outside the home, including negotiating public transportation." Tr. 365.

Heather Lindsay, a vocational rehabilitation counselor performed a work evaluation of plaintiff in her 2011, following plaintiff's work with St. Vincent de Paul. Ms. Lindsay opined that plaintiff's work productivity and quality are not competitive with the community standard. Ms. Lindsay wrote, however, that "[t]his is due to her inexperience in work as well as her Learning disability and barriers to employment. She does not perform well in an independent setting, benefitting from work in a team setting." Tr. 173. Ms. Lindsay further pointed out that

---

[2] Plaintiff testified that she had a breakdown on her fast day at NYC and began crying.
[3] Plaintiff testified that her employer did not think she was capable of work a full 40 hour work week. Plaintiff averred that her employer was sympathetic and made accommodations for plaintiff, such as allowing her to leave work whenever she feels overwhelmed or has a breakdown, because her employer has a son with Asperger's Syndrome.

Page 7 – OPINION AND ORDER

plaintiff "would *benefit* from Supported Employment service for ongoing job coaching and retention" *Id.* (emphasis added). She concluded that "[i]t is recommended that Amanda look for work that is repetitive and that speed can be increased over time." *Id.*

The state agency reviewing psychologists, Dorothy Anderson, Ph. D and Paul Rethinger, Ph.D. also opined that plaintiff "will be able to manage simple tasks and routines, *as long as she receives supportive and fairly close supervision* to help her deal with her cognitive restrictions, help her adjust to work setting demands and deal with coworkers." Tr. 60-61, 72 (emphasis added). They also noted, however, that plaintiff "was a motivated young woman who doesn't demand special setting or supervision, but an encouraging work setting." Tr. 61. These statements seem to contradictory regarding the amount of supervision required by plaintiff.

Dr. Miller Garrison, the ME who testified at plaintiff's hearing, noted that the medical record in this case was "sparse." Tr. 382. Nevertheless, Dr. Garrison opined that plaintiff's symptoms did not meet or equal any of the Listed Impairments. He stated that plaintiff "definitely" had "ongoing functional limitations" though they did not "rise to the level that the Social Security Administration wants to have a disorder." Tr. 384. Dr. Garrison also opined that from 2011 plaintiff would have been capable of unskilled work, that is work performing simple repetitive routine tasks, except for a short period between 2012-2013. He noted that any work dealing with general public and coworkers would have to be limited. Dr. Garrison did state that plaintiff may have been capable of brief superficial interaction with coworkers and the general public on an intermittent basis.

When presented with a synopsis of the OVRS evaluation from 2011, Dr. Garrison said that it did not change his position regarding whether plaintiff could work. He noted that "it's important to keep in mind that, you know she's at the 5th percentile kind of in broad overall

intelligence, reasoning ability. [. . .] [M]ost people at this level of intelligence require a lot of support, training, and are able to develop in a job." Tr. 390. Plaintiff's counsel asked Dr. Garrison if he agreed with the statement from Dr. Prescott "that claimant's not likely to maintain employment without job support services." Tr. 391. Dr. Garrison responded, "[c]ertainly." *Id.*

There is ambiguity over what constitutes support services mentioned at various times throughout the medical record.[4] At the most recent hearing before the ALJ, plaintiff's counsel asked the VE the following hypothetical:

> "Assume an individual of claimants age, education, and past work background, which is none, and I'd like to also assume that this individual would be unable to be employed with job support services. Would these jobs you have described today allow job support services?"

The VE responded that the jobs would not allow those services. The ALJ asked for the VE's interpretation of what job support services means. The VE responded that she interpreted the phrase to mean that there would be "a job coach." Tr. 408

Plaintiff's counsel also referenced Ms. Lindsay's report where it was noted that plaintiff productivity in all of the setting in which she worked was not a the community standard of 70%. This means that plaintiff would be off task 30% of the time. The VE testified that plaintiff would not be able to maintain employment in the three jobs she listed pursuant to the ALJ's hypothetical.

As noted above, there are conflicts in the record over whether plaintiff requires job support services and what those services would entail. Regarding whether plaintiff requires job support services, Dr. Prescott said it was unlikely that plaintiff would maintain employment without them, whereas Ms. Lindsay said that plaintiff would merely benefit from those services.

---

[4] In a September 23, 2009 report, Eugene School Psychologist Barbara Keyworth noted that "[i]t appears that Amanda will continue to require a great deal of support and supervision to develop functional vocational skills and independent living skills." Tr. 259

Page 9 – OPINION AND ORDER

Neither they or Dr. Garrison specifically mentioned the need for a job coach. Further, the plaintiff's RFC does not contain any limitation about job support services, merely that she would work and function better in a team setting. All the medical evidence agrees that some form of additional support would at least be beneficial to plaintiff. It is also unclear from the VE's testimony whether there are any jobs in which plaintiff could work if a restriction for closer supervision were included in her RFC.[5] Ultimately, it should be left to the ALJ "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1098, 1107 (9th Cir. 2014). Because the issues of whether plaintiff requires job support services, what the precise nature of those services would be, and if there are any jobs in the national economy which would allow for those services is still unclear, I cannot conclude that the record is fully developed and free from conflicts.

Given that I have concluded that record is not free from ambiguity and conflicts, requiring further development, I need not reach the third step of the credit-as-true process. I also decline to address plaintiff's remaining arguments, which are moot based on the incomplete record and this order of remand.

On remand, the Appeals Council shall determine if a finding of disability may be on the record as stands. If not, then the ALJ shall offer plaintiff a new administrative hearing, update the medical record, and issue a new decision. The ALJ shall also further consider the medical opinions of Dr. Prescott, Dr. Anderson, Dr. Rethinger, Dr. Garrison, and Ms. Lindsey, regarding plaintiff's ability to perform unskilled work on a regular and continuous basis. The ALJ shall also further clarify the nature and conditions of plaintiff's previous work activity. Finally, the

---

[5] The VE did note that, in general, "[e]mployers are going to be less tolerate [sic] when you're dealing with unskilled work. A person who would continue to need prompts would probably require more supervisor than a supervisor would be willing to give." Tr. 409. This general statement, however, does not adequately clarify the issue in light of the entire record.

Page 10 – OPINION AND ORDER

ALJ shall reevaluate plaintiff's RFC in light of the entire record and obtain vocational expert evidence at step five to resolve ambiguities over whether plaintiff's work restrictions, especially whether the possible need for "job support services," would preclude gainful employment in the national economy.

## CONCLUSION

The Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 27 day of March 2018.

Ann Aiken
United States District Judge